UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

CITIZENS FOR RATIONAL COASTAL
DEVELOPMENT,

        Plaintiff,

   v.

U.S. FEDERAL HIGHWAY
ADMINISTRATION, *et al.*

        Defendant.

Civil Action No. 07-4551 (JAP)

---

BOROUGH OF SEA BRIGHT,

        Plaintiff,

   v.

J. RICHARD CAPKA, SECRETARY
OF TRANSPORTATION, *et al.*,

        Defendant.

Civil Action No. 07-5246 (JAP)

**OPINION**

---

PISANO, District Judge

Presently before the Court is a motion by Plaintiffs, the Borough of Sea Bright and proposed Plaintiff Thomas E. Scriven[1] (together, "Plaintiffs") for a preliminary injunction

---

[1] A motion to amend Sea Bright's Complaint to add Mr. Scriven as a plaintiff, to add Kris Kolluri, the Commissioner of Transportation of the State of New Jersey and the Department of Transportation of New Jersey as defendants, and to make certain changes to the caption has been filed by Sea Bright and is currently pending.

enjoining "any further planning, acquisition of right-of-way, financing, awarding of bids, contracting or construction of" an ongoing transportation project that will replace an existing movable bridge on New Jersey State Route 36 (the "Route 36 Bridge") with a higher, fixed-span bridge. Plaintiffs seek to enjoin the project "until and unless Federal and State Defendants have fully complied with [Department of Transportation Act, Section 4(f), 49 U.S.C. § 303]," referred to herein as "Section 4(f)." This is Plaintiff's second motion for an injunction under this statute, as Plaintiffs previously filed a motion seeking similar injunctive relief that the Court denied by way of an Opinion and Order filed February 21, 2008 ("February 21 Opinion"). As set forth below, because the Plaintiffs have failed to establish that they are entitled to preliminary injunctive relief, their motion to enjoin the on-going bridge replacement project is denied.

**I.  Background**

An extensive discussion of the underlying facts is set forth in this Court's February 21 Opinion and, therefore, will not be repeated here. However, while familiarity with the facts in the prior Opinion is presumed, a brief factual summary that includes certain additional facts relevant to the instant motion is provided below.

A.  Factual Summary

The Route 36 Bridge extends over the Shrewsbury River near Sandy Hook Bay and connects Highlands Borough on the mainland with certain shoreline towns such as Sea Bright. In 1991, the New Jersey State Historic Preservation Office ("SHPO") found that the bridge was eligible for listing on the State and National Register of Historic Places, both as an example of early 20th century moveable bridge technology as well as for its role as part of the viewshed of the Navesink Lighthouse, an historic lighthouse.

It would not be an exaggeration to say that the Route 36 Bridge project has been underway, in some form, for decades. Beginning as early as the 1980's, the State of New Jersey began seeking funding under the Federal-Aid Highway Act, 23 U.S.C. § 101, *et seq.*, to undertake the requisite environmental and design studies for the rehabilitation or replacement of the Route 36 Bridge. At first, a major rehabilitation to the existing bridge was proposed, but in October 1991, New Jersey's Department of Transportation ("NJDOT") reconsidered the proposed rehabilitation project and explored the alternative of replacing the bridge. The proposed fixed-span replacement bridge provided a long term solution to deficiencies in the existing bridge as well as to traffic problems caused by numerous openings of the drawbridge. Over several years, a number of studies were undertaken to evaluate the available alternatives for the bridge. Ultimately, the alternative of a high-level fixed bridge was recommended as best meeting the goals of the project.

After deciding to proceed with the recommended alternative, NJDOT engaged in community outreach regarding the project for the next several years. As a result, the neighboring municipalities of the Borough of Highlands and Sea Bright, the plaintiff in this case, passed resolutions supporting the proposed replacement bridge and entered into utility agreements with NJDOT. NJDOT also consulted with and obtained from the appropriate agencies the necessary approvals and permits to move ahead with the replacement project. With respect to Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 303, the Federal Highway Administration ("FHWA") and the NJDOT issued a Nationwide Programmatic Section 4(f) Evaluation in July 2005, concluding that there was no prudent and feasible alternative to the use (demolition) of the existing Route 36 Bridge.

Additionally, NJDOT and FHWA consulted with SHPO, the Advisory Council on Historic Preservation, and the National Park Service under the National Historic Preservation Act ("NHPA") Section 106, and Federal-Aid Highway Act ("FAHA") Section 4(f). A memorandum of agreement was executed and approved by FHWA, the National Park Service, the NJDEP, and NJDOT, resolving the relevant issues and addressing how the project would be carried out to mitigate the historical impact. On May 25, 2007, after extensive consultation between NJDOT and New Jersey's Department of Environmental Protection ("NJDEP")[2] as to the remaining historical impact issues under state law, SHPO approved NJDOT's application for the project.

In addition to the demolition of the existing bridge, the current construction project involves the use of certain parcels of land near the bridge known as Parcel 122 and Parcel 123. The state of New Jersey acquired Parcel 122 and certain other parcels by deed dated December 4, 1962. *See* State Def. Ex. 1, Ex. 2 at ¶ 3. Forty-five years later, in 2007, to clarify the status of Parcel 122, a second sale agreement was executed for nominal consideration of one dollar and a new deed recorded. State Def. Ex. 2 at ¶ 3. According to the declaration of Richard Crum, the Director of the Division of Project Management for NJDOT, the ownership of Parcel 122 by the State predates the Green Acres program of the State, and the parcel has never been listed as parkland on the Open Space Inventory of the Borough of Highlands or with the NJDEP. State Def. Ex. 2 at ¶ 4.

Lot 123 was acquired from the Borough of Highlands in 2007. This area, known as "South Bay Avenue Park," was considered protected parkland. State Def. Ex. 2 at ¶ 5. It was,

---

[2] The New Jersey's Historic Preservation Office is located within the state's Department of Environmental Protection.

consequently, evaluated in the 2005 Nationwide Programmatic Section 4(f) Evaluation and mitigation of the project's impact as to this parcel has been provided.

B.  Procedural History

The Borough of Sea Bright filed its Complaint in this action on October 31, 2007, against the Secretary of Transportation, J. Richard Capka, and the Federal Highway Authority seeking judicial review under the APA, 5 U.S.C. § 706(2)(A), asserting that the Defendants approved this project in violation of certain federal statutes.  The Complaint alleged violations of the following: (i) National Environmental Policy Act; (ii) Section 4(f) of the Department of Transportation Act ("Section 4(f)"); and (iii) the FHWA's "Movable Bridge Policy" embodied in 23 C.F.R. 650.809. Citizens for Rational Coastal Development ("CRCD") filed an earlier, similar suit against these defendants, the New Jersey Department of Transportation and the New Jersey Department of Environmental Protection.  The Court consolidated both civil actions for all purposes on January 28, 2008.[3]

Plaintiffs subsequently moved for preliminary injunctive relief under Section 4(f), which the Court denied from the bench on February 4, 2008.  A written Opinion and Order followed and was filed on February 21, 2008.

On April 25, 2008, Sea Bright filed a motion to amend its complaint.  That motion is presently pending.  The proposed amended complaint modifies the parties as discussed above, adds allegations that address recent factual developments such as the change in the demolition and construction schedule, and raises certain issues regarding Parcel 122 that are discussed

---

[3]CRCD has advised that it expects to take a voluntary dismissal of its Complaint with prejudice should Sea Bright's currently pending motion to amend the complaint be granted. CRCD has not joined in the instant motion.

5

further herein.

**II.  Discussion**

A.  Standard for Preliminary Injunctive Relief

In evaluating a motion for preliminary injunctive relief, a court must consider whether: "'(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest.'" *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir.1999) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir.1998)).  A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Masurek v. Armstrong*, 520 U.S. 968, 972 (1997). Preliminary injunctive relief is an "extraordinary and drastic remedy", *id.*, which "should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994). [4]

B.  Irreparable Harm

At the time Plaintiffs' first motion for a preliminary injunction was briefed and argued, the State defendants had represented to the Court that demolition of the existing bridge would not take place until approximately May 2009.  Several weeks after the Court issued its decision

---

[4]Some recent district court decisions have noted that The Third Circuit has not settled whether all four factors must be balanced in each case, or whether a failure to satisfy the first two factors obviates the need to examine the last two factors. *See Quaker Chem. Corp. v. Varga*, 509 F.Supp.2d 469, 478 n. 7 (E.D. Pa. 2007); *Brown v. Diguglielmo*, 2007 WL 4570717, *1 (E.D. Pa. 2007).

denying that motion, counsel for the State defendants advised the Court and the parties of a change construction scheduling, and indicated that such demolition could begin as early as June 1, 2008.

"A plaintiff has the burden of proving a clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987); *see also Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 973 (3d Cir.1980) ("To support a preliminary injunction, the moving party must show harm that is both imminent and irreparable."). As it presently stands, the Court has been advised that partial dismantling of certain portions of the existing bridge is scheduled to being on June 1, 2008. As such, the State defendants concede, and the Court finds, that this element of the relevant analysis has been met in that irreparable harm may occur to the existing bridge absent preliminary injunctive relief.

C. Likelihood of Success on the Merits

In addition to the conceded point regarding irreparable harm, Plaintiffs set forth two other bases in support of their motion for injunctive relief.[5] First, they contend that injunctive relief is warranted because Defendants have used Parcel 122 in violation of the Department of Section 4(f). Second, they contend that injunctive relief is warranted because Defendants have allegedly

---

[5]Rather than address the four separate elements of the preliminary injunction analysis directly, Plaintiffs' moving brief contains three point headings in its legal argument which appear to asserted by Plaintiffs as warranting, either in combination or on their own, the granting of the injunctive relief sought. These point headings are as follows: "I. Defendants Used Lot 122 For A Transportation Project in Violation of Section 4(f) Without Examining Avoidance Alternatives or Minimizing Harm;" "II. Harm To The Bridge Imminent; Harm To Lot 122 Has Already Occurred;" and "III. Relevant Documents Are Missing From the Record." The Court addresses each of these in the context of the appropriate four-prong analysis.

withheld certain relevant documents from Plaintiffs.[6]  The Court will address each argument in turn.

1.  Use of Parcel 122

As noted above, Plaintiffs contend that injunctive relief is warranted because Defendants have "used" Parcel 122 in violation of the Department of Transportation Act, Section 4(f).  Such use involved the destruction of an allegedly historic Civil War era dock formerly located on the parcel as well as the use of the parcel by the State for staging the construction of the Route 36 Bridge project.  Plaintiff argues that such use was improper because the requisite findings regarding the parcel were not made pursuant to Section 4(f).

Section 4(f) provides in the relevant part as follows:

[T]he Secretary may approve a transportation program or project (other than any project for a park road or parkway under section 204 of title 23) requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if--

(1) there is no prudent and feasible alternative to using that land; and

(2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

49 U.S.C. § 303.  Thus, under Section 4(f), the Secretary of Transportation may approve a

---

[6]In the course of its "missing documents" argument, Plaintiffs take the opportunity to point out to the Court where Plaintiffs believed the Court erred in its earlier decision that denied Plaintiffs' first motion for a preliminary injunction.  To the extent that Plaintiffs are seeking reconsideration of the Court's prior decision, Plaintiffs are out of time to make such a motion and such arguments have not been considered by the Court.  *See* Local Civil Rule 7.1(i) (motions for reconsideration must be filed within 10 business days of entry of order).  To the extent that Plaintiffs are asking the Court to revisit the same arguments made in Plaintiffs' earlier motion, the Court declines to do so.

transportation program or project requiring the use of an historic site only if (1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the historic site resulting from the use.  49 U.S.C. § 303.

Plaintiffs assert that Parcel 122 was public parkland held by the Borough of Highlands and protected by Section 4(f).  If Plaintiffs are correct, the Defendants would have been required under Section 4(f) to make a finding that no prudent and feasible alternative to using the land existed prior to using the parcel, and then undertake "all possible planning" to minimize harm to the parcel.

In support of their position that Parcel 122 is parkland subject to Section 4(f), Plaintiffs point to correspondence between the NJDOT and the Borough of Highlands regarding "a small parcel of the South Bay Avenue Park adjacent to the bridge."  *See* Appendix A to July 2005 Programmatic Evaluation at Def. Ex. 86 (First Motion for Prelim. Inj.).[7]  In connection with NJDOT's obligations under Section 4(f), by letter dated December 4, 2002, NJDOT asked for a written response from the Borough of Highlands to certain questions seeking information regarding this "South Bay Avenue Park" parcel.  In a letter dated March 27, 2003, the director of recreation for the Borough of Highlands responded to the inquiry.  Plaintiffs claim these letters

---

[7]The Court must note that it is troubled by the Plaintiffs' lack of specificity at times in their citations to the record that occurred in both this motion and, to a greater degree, in their previous motion.  The record in this case is extensive, and a citation to, for example, "letter dated March 27, 2003, attachment to July 2005 Programmatic Evaluation" (Pl. Brf. at 13) or "Historic Bridge Alternatives Analysis, VII. D." (Pl. Brf. at 20) requires the Court to treasure hunt through the record for the appropriate materials.  As noted by our circuit and others, "Judges are not like pigs, hunting for truffles buried in the record." *Doebler Pennsylvania Hybrids, Inc. V. Doebbler*, 442 F.3d 812, 820 n.8 (3d Cir.2006).  Plaintiffs' counsel are advised that, for future briefing in this case, *all* citations to exhibits and other supporting materials should include specific exhibit numbers and page numbers rather than simply general references to document titles.

show that Parcel 122 was parkland subject to Section 4(f).

Defendants disagree with Plaintiffs' contention that Parcel 122 was protected parkland, and, therefore, contend that the use of the parcel for the current project did not implicate Section 4(f). Defendants first point out that the correspondence cited by Plaintiffs does not refer to Parcel 122. According to the affidavit of Richard Crum, "South Bay Avenue Park," which is the land referred to in the cited correspondence, is not Parcel 122, but rather is Parcel 123. The parties agree that Parcel 123 was protected parkland, and this parcel was included in the Defendants' 2005 Section 4(f) evaluation. *See* State Def. Ex. 2 at ¶ 5.

Mr. Crum further notes that the State acquired Parcel 122 in 1962 as part of a larger land acquisition. State Def. Ex. 2 at ¶ 3; *see also* Ex. 1. According to Crum, because the acquisition pre-dated the State's Green Acres program, the parcel was never on the Recreation and Open Space Inventory of the Borough of Highlands or with the NJDEP. State Def. Ex. 2 at ¶ 3. Consequently, according to the Defendants, Parcel 122 was not protected parkland and no violation of Section 4(f) has occurred with respect to that parcel.

Based on the evidence presented on this motion, it appears Section 4(f) was not implicated by the use of Parcel 122 because the land was not parkland. Plaintiffs, citing *Cedar Grove, Inc. v. Stanzione*, 122 N.J. 202 (1991), attempt to argue that the Court should deem the parcel parkland under New Jersey's Green Acres Act, but there simply is no evidence before the Court for the Court to do that. The statute at issue in *Stanzione* stated that "[a] local unit which receives a grant under this act shall not dispose of or divert to a use for other than recreation and conservation purposes any lands held by such local unit for such purposes at the time of receipt of said grant without the approval of the commissioner [of the DEP] and the State House

10

Commission and following a public hearing by the local unit at least 1 month prior to any such approvals." *Id.* at 210 (citing N.J.S.A. 13:8A-47b). With no citation to anything in the record, Plaintiffs' reply brief baldly states that "Highlands has accepted Green Acres funds, many years ago now, and thus Lot 122 as undeveloped open space used for recreation is deemed parkland under state law." Reply Brf. at 3; see also Reply Brf at 7 ("when [Highlands] received its first Green Acres grant, . . ."). However, Plaintiff simply has not provided the Court with any evidence to establish these assertions. Therefore, Plaintiffs' argument fails. Plaintiffs has not established that they are likely so succeed on the merits of their claim that Parcel 122 is protected parkland subject to Section 4(f).

Nevertheless, even if the Court had found otherwise, Plaintiffs' Section 4(f) claim as to Parcel 122 appears to be largely, if not entirely, moot. "If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *County of Morris v. Nationalist Movement*, 273 F.3d 527 (3d Cir. 2001). There is no dispute here that an allegedly historic dock on Parcel 122 has been demolished and further, as described by Plaintiffs, "there has been an entire take and use of [Parcel]122, already, for the construction of the bridge." Pl. Brf. at 6. As such, the relief sought by Plaintiffs in their proposed amended Complaint as to Parcel 122 -- namely, declarations regarding various alleged failures to comply with certain requirements of Section 4(f), as well as injunctive relief halting the on-going construction project until such requirements are met -- appears to have been rendered meaningless. Where the harm sought to be avoided by the injunction has already occurred, it does not appear that the Court can provide any effective relief.

In sum, the Court finds that Plaintiffs have not shown a likelihood of success on the

merits with respect to their Parcel 122 claim.

2.  Missing Documents

Plaintiffs' argument with regard to "missing documents" appears to be twofold. First, Plaintiff complains that Defendants have not met certain discovery deadlines. Second, Plaintiffs allege that Defendants have not produced certain documents that are allegedly significant to Plaintiffs' motions for preliminary injunctive relief. Specifically, Plaintiffs allege that Defendants have failed to produce a 1991 "feasibility study" and an accompanying engineering report that are referenced in other documents provided by Defendants.

In response to Plaintiffs' assertions, the State Defendants explain that no separate feasibility study was performed in 1991. *See* State Def. Ex. 2 at ¶ 6. They state that the "feasibility study" and engineering report referenced in the record and sought by Plaintiffs are actually a single document, the Value Engineering Evaluation of 1991. This document was provided to the Court (as well as Plaintiffs) as Defendants' Exhibit 11 to the first motion for preliminary injunctive relief.

Moreover, Plaintiffs have not adequately explained under what theory they seek entry of a preliminary injunction based upon what appears to be, at most, a run-of-the-mill discovery delay and/or dispute. To the extent Plaintiffs seek such relief as a sanction for discovery violations, such a sanction would be wildly inappropriate under the facts of this case. Plaintiffs' claims with respect to missing and/or delayed discovery do not warrant the entry of a preliminary injunction.

D.  The Balance of the Relative Harms

The third factor in the preliminary injunction analysis requires a court to balance the relative harms to the parties. A court must consider whether "the relative harm which will be

visited upon the movant by the denial of injunctive relief is greater than that which will be sustained by the party against whom relief is sought." *Atlantic City Coin & Slot Serv. Co., Inc. v. IGT*, 14 F. Supp. 2d 644, 657 (D.N.J.1998); *see also Neo Gen Screening, Inc. v. TeleChem. Intern., Inc.*, 69 Fed. Appx. 550, 554 (3d Cir.2003).

Here, Plaintiff seeks an injunction halting construction of the replacement bridge until such time that Defendants cure the alleged deficiencies in their Section 4(f) evaluation. Absent an injunction, the harm to Plaintiffs will be that demolition to certain parts of the bridge may commence allegedly in the absence of a proper Section 4(f) analysis. Even if the Court were to grant the injunction Plaintiffs seek, there remains a possibility that further Section 4(f) evaluation could indicate no prudent and feasible alternative to bridge replacement exists, and that the project should proceed exactly as presently planned.

With respect to the harm to Defendants, as the Court found in its previous Opinion, Defendants have shown that even a minor delay in the project could delay construction of the replacement bridge for a year or more. Due to the continuing deterioration of the existing bridge, any delay in the project only increases the likelihood of hazards to the public. Although the Court finds that safety concerns are paramount, it is also noteworthy to the balance of harms analysis that a delay would result in a substantial escalation of the costs of the project, on which substantial public funds have already been expended. Given these facts, the Court finds that balance of the relative harms does not favor Plaintiffs, and, therefore, this factor weighs against the imposition of a preliminary injunction.

E. The Public Interest

The final equitable factor a court must consider is "the public interest in the grant or

denial of the requested relief, if relevant." *Atlantic City Coin*, 14 F. Supp. 2d at 657. As discussed at length in the Court's earlier Opinion, the public interest in the grant or denial of the requested relief here is significant. An injunction halting, even temporarily, a project to replace a 75-year old bridge at the end of its service life, that is in a state of disrepair and which continues to deteriorate, and that is a key link in a major coastal evacuation route, presents serious public safety concerns. The Court shall not repeat its findings from its previous Opinion in this regard, as it is sufficient to say that nothing has been presented in this second motion that would alter the Court's earlier findings and conclusions with respect to this fourth element of the preliminary injunction analysis. All of the same interests remain present and continue to weigh against the granting of the injunction. Therefore, the Court finds that, on balance, the public interest weighs against granting preliminary injunctive relief sought by Plaintiffs.

**III.  Conclusion**

      For the reasons expressed above, Plaintiffs' second motion for a preliminary injunction is denied. An appropriate Order accompanies this Opinion.

                                        /s/ JOEL A. PISANO
                                        United States District Judge

Dated: May 29, 2008