RECEIVED

JUL 1 6 2008

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CITIZENS FOR RATIONAL COASTAL DEVELOPMENT, | : | |
| Plaintiff, | : | Civil Action No. 07-4551 (JAP) |
| v. | : | |
| U.S. FEDERAL HIGHWAY ADMINISTRATION, *et al.* | : | |
| Defendant. | : | |
| BOROUGH OF SEA BRIGHT, | : | |
| Plaintiff, | : | Civil Action No. 07-5246 (JAP) |
| v. | : | |
| J. RICHARD CAPKA, SECRETARY OF TRANSPORTATION, *et al.*, | : | **OPINION** |
| Defendant. | : | |

PISANO, District Judge

Presently before the Court is a motion by Plaintiff, the Borough of Sea Bright ("Sea Bright"), for an injunction staying the ongoing demolition of a movable bridge on New Jersey State Route 36 (the "Route 36 Bridge") pending Plaintiff's appeal of an earlier Order by this Court that denied Plaintiff's motion for a preliminary injunction. Plaintiff has twice previously moved for an injunction halting the transportation project to replace the existing Route 36 Bridge

with a higher, fixed-span bridge, and the Court denied both motions. Plaintiff alleges that

defendants have failed to comply with the requirements of the Department of Transportation Act,

Section 4(f), 49 U.S.C. § 303 ("Section 4(f)"), which protects public parkland and historical sites.

For the reasons set forth below, Plaintiff's motion for an injunction pending appeal is denied.

## I. Background

As the detailed factual background of this matter has been set forth in the Court's earlier

Opinions, the Court shall provide a summary of only the pertinent facts.

## A. Factual Summary

The Route 36 Bridge extends over the Shrewsbury River near Sandy Hook Bay and

connects Highlands Borough on the mainland with certain shoreline towns such as Sea Bright. In

1991, the New Jersey State Historic Preservation Office ("SHPO") found that the bridge was

eligible for listing on the State and National Register of Historic Places, thus bringing the bridge

within the protections of Section 4(f). As noted earlier, the State of New Jersey has undertaken a

project to replace the existing Route 36 Bridge, which is a drawbridge, with a higher, fixed-span

bridge. The project has its beginnings as far back as the 1980's, but it has only been as recently

as the last month or so that construction of the new bridge/dismantling of the old bridge has

commenced. Plaintiff states that the dismantling of parts of the existing bridge began in early

June after the Court denied Plaintiff's second motion for an injunction. As the photographs

provided by Plaintiff show, the demolition began with the dismantling of the sidewalks on the

existing bridge. Certification of Janine Bauer, Esq. ("Bauer Cert.") ¶ 10.

According to Plaintiff, the Mayor and certain council members from Sea Bright met in

mid-June with representatives of NJDOT to request that destruction of the existing Route 36

Bridge be delayed until after Labor Day, 2008. Bauer Cert. ¶ 1. NJDOT apparently would not agree to a lengthy postponement, but agreed to postpone destruction of the bridge until after the July 4th holiday. Id. at ¶ 2. Plaintiff states that sometime after July 4th, a major portion of the bridge is scheduled to be demolished, including two travel lanes. Id.

Consistent with its arguments in its earlier motions, Sea Bright asserts that demolition of the bridge is being undertaken in violation of the requirements of Section 4(f). First, Plaintiff alleges that Defendants did not study the alternative of undertaking a major rehabilitation of the bridge before committing to replacing the bridge and, as a result, the Secretary of Transportation cannot certify that there is no prudent or feasible alternatives to demolishing the bridge. Second, Plaintiff alleges that, in the course of staging construction equipment, NJDOT has destroyed a public dock on a parcel of land ("Parcel 122"), which Plaintiff alleges is protected parkland under Section 4(f). Plaintiff alleges that Defendants failed to include this purported parkland in the evaluation that was conducted in connection with the project as required by Section 4(f).

B. Procedural History

On October 31, 2007, Sea Bright filed its Complaint in this action against the Secretary of Transportation and the Federal Highway Authority seeking judicial review under the APA, 5 U.S.C. § 706(2)(A). The Borough asserted that the defendants approved the Route 36 Bridge project in violation of: (i) National Environmental Policy Act; (ii) Section 4(f) of the Department of Transportation Act; and (iii) the FHWA's "Movable Bridge Policy" embodied in 23 C.F.R. 650.809. A citizens group called Citizens for Rational Coastal Development ("CRCD") filed an earlier, similar suit against the above listed defendants, as well as the New Jersey Department of Transportation ("NJDOT") and the New Jersey Department of Environmental Protection

3

("NJDEP," together with NJDOT, the "State Defendants"), and the two cases were ultimately consolidated.[1]

On December 19 and 20, 2007, respectively, Sea Bright and CRCD each filed the same "joint" motion for a preliminary injunction with respect to their claims under Section 4(f), seeking to enjoin the Route 36 Bridge project "until Defendants have fully complied with section 4(f) of the DOT Act." Joint Brief in Support of Motion for Injunctive Relief at 2. The Court heard oral argument on the motions on January 28, 2008, and on that same date consolidated both civil actions for all purposes. A short time later, on February 4, 2008, the Court rendered its decision denying the motion from the bench, and a written Opinion and Order followed on February 20, 2008.

As noted in this February 20th decision, under the construction schedule known to the State Defendants at the time the motion was argued, the existing bridge was to remain in service until May 2009. The State Defendants represented that the bridge was to remain "essentially undisturbed" until the fall of 2008 and would not be taken out of service until May 2009. *See* Def. Ex. (First Motion) 55 (Declaration of Richard Crum). However, on or about March 12, 2008, the State Defendants advised the Court and the parties that this timing had changed. By way of a declaration filed on March 12, 2008, the State Defendants advised that, due to an unanticipated change in the construction schedule by the contractor handling the project, the dismantling of some portions of the existing bridge could take place several months earlier than the State Defendants originally expected. The declaration put all parties on notice that the

---

[1] CRCD's action was dismissed with prejudice by consent order dated June 20, 2008.

dismantling could begin as early as June 1, 2008.[2]

About two months after the State filed its declaration, on May 9, 2008,[3] Sea Bright moved a second time for a preliminary injunction enjoining in its entirety the Route 36 Bridge project "until and unless Federal and State Defendants have fully complied with section 4(f) of the DOT Act." Plaintiff's Memorandum of Law in Support of Second Motion for Preliminary Injunction at 2. Pursuant to Sea Bright's Notice of Motion, the motion was returnable June 2, 2008, approximately the date the dismantling was slated to begin. Although expedited treatment had not been expressly requested by Sea Bright, in light of the impending demolition, the Court expedited the hearing and decision on this second motion. Oral argument was held on May 27, 2008, and the Court issued a written Opinion and Order denying the motion on May 30, 2008.

Approximately three weeks later, on June 19, 2008, Sea Bright filed a Notice of Appeal with respect to the Court's May 30th denial of its motion. On that same day, Sea Bright filed the instant motion for an injunction staying the destruction of the Route 36 Bridge pending a decision on its appeal to the Third Circuit Court of Appeals. Sea Bright has asked for expedited treatment of the current motion, and the Court has treated the motion accordingly. However, the Court feels compelled to note that despite its request expedited treatment -- Sea Bright has asked the Court to render a decision "on an emergent basis"-- and despite the fact that both the Court and the Defendants have made extraordinary efforts to expedite *each* of the motions brought by

---

[2]Sea Bright has filed a motion to amend its complaint and that motion is presently pending. The proposed amended complaint adds certain parties, adds allegations that address recent factual developments such as the change in the demolition and construction schedule, and raises certain issues regarding the projects use of certain parcels of land.

[3]On this date Sea Bright also filed a motion for an extension of time to appeal the Court's first Order denying preliminary injunctive relief. The motion was denied.

Plaintiff, including the instant motion, the Court feels that Sea Bright itself has not treated the matter with the same urgency that it asks the Court apply. For example, although Sea Bright filed a Notice of Motion and certification of counsel on June 19th, it did not file its brief in support of the instant motion until July 2, 2008.[4] Moreover, while Sea Bright has stated in this motion that it would seek expedited treatment of its appeal, the State Defendants point out that Sea Bright has not filed the requisite motion in the Court of Appeals to expedite the appeal. *See* Local Appellate Rule 4.1 (motion to for expedited treatment must be filed within 14 days of filing Notice of Appeal).

## II. Analysis

Federal Rule of Civil Procedure 62(c) provides that when "an appeal is pending from an interlocutory order or final judgment that . . . denies an injunction," a district court, in its discretion, " may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Pursuant to Federal Rule of Appellate Procedure 8, such a motion is ordinarily brought first in the district court unless doing so would be "impracticable." FRAP 8.

As other courts have noted, a party moving for an injunction under Rule 62(c) may be "placed in the in the position of requesting the very relief, pending appeal, that [the] Court has just decided it is not entitled to receive." *FTC v. Equitable Resources, Inc.*, 2007 WL 1500046 (W.D. Pa. May 21, 2007). As such, "[a]lthough Rule 62(c) recognizes that such apparently anomalous relief may sometimes be appropriate, the party seeking such relief is, not surprisingly,

---

[4]Sea Bright electronically filed its brief at 9 pm on July 2nd. The State Defendants filed their response the next day (July 3), and the Federal Defendants filed their response the next business day after that (July 7).

6

deemed to bear a very heavy burden of persuasion." *See id.*; *see also* Wright, et al., 11 Fed. Prac.
& Proc. Civ.2d § 2904 (burden of meeting the Rule 62(c) standard for injunctions pending appeal
is a "heavy one").

The four factors the Court must evaluate in determining whether to grant a motion for an
injunction pending appeal are familiar in this case -- they are essentially the same factors the
Court twice applied in denying the two previous motions for preliminary injunctive relief: "(1)
whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the
stay will substantially injure the other parties interested in the proceeding; and (4) where the
public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119 (1987).

Likelihood of Success on the Merits

According to Plaintiff, "the thrust of this case" is whether the alternative of major
rehabilitation was considered by the Secretary of Transportation in allowing NJDOT to demolish
the existing Route 36 Bridge and replace it.  Memorandum of Law in Support of Plaintiff's
Motion for a Stay at 4.  Plaintiff argues, as it did in its earlier motions, that "the record is devoid
of a finding by the Secretary or FHWA [that] the major rehabilitation alternative, if undertaken,
would cause a loss of historic integrity to the bridge." *Id.* at 5.  The Court, however, disagrees.

In 2005, the Defendants prepared a Nationwide Programmatic Section 4(f) Evaluation,
which analyzed the various alternatives with respect to the Route 36 Bridge project.  Def. Ex. 86.
Under FHWA's own procedures, a Programmatic 4(f) Evaluation must evaluate three
alternatives: (1) do nothing; (2) build a new structure at a different location without affecting the
historic integrity of the old bridge; and (3) rehabilitate the historic bridge without affecting its

7

historic integrity. *See* Historic Bridges; Programmatic Section 4(f) Evaluation and Approval, 48 Fed.Reg. 38,135, 38,137 (August 22, 1983). Relevant to the instant motion is the alternative of rehabilitating the bridge without affecting its historic integrity. *Id.* In the section of Defendants' 2005 Programmatic 4(f) Evaluation that addressed this alternative, the introductory sentence states that "[t]his alternative assumes that minor rehabilitation work would be performed." Def. Ex. 86 at 13. Because only rehabilitation alternatives that do not affect the bridge's "historical integrity" were appropriate for analysis under this section, it is clear that a determination had been made that any rehabilitation other than "minor" would affect the historical integrity of the bridge.

Moreover, as the State Defendants have pointed out, that conclusion appears to be well-grounded in the record. In no fewer than three reports prepared by the NDOT's consultant, Sverdrup & Parcels ("Sverdrup"), the consultant concluded that a major rehabilitation would affect the "historical integrity" of the existing Route 36 Bridge. In 1996, an Historic Bridge Alternatives Analysis found that because of "the removal of superstructure, mechanical and electrical components and alterations to the piers, this alternative will not maintain the historical integrity of the bridge." Def. Ex. 13 at 24. In 1999, the Feasibility Study Evaluation of Alternatives found that the alternative of major rehabilitation would "not strictly maintain the historic integrity of the bridge and could therefore lead to an Adverse Effect." Def. Ex. 15 at 26. In 2003, a Feasibility Assessment Report concluded that major rehabilitation of the bridge would "diminish[] its historical integrity, and, therefore, caus[e] an adverse impact." Def. Ex. 21 at 42.[5]

_____

[5]In its earlier Opinion, the Court also referred to a determination by SHPO in 1991 that certain rehabilitation work on the bridge would constitute an "adverse effect." Plaintiff asserts that this reference to "adverse effect" is in the context of Section 106 of the National Historic

With respect to these reports, Plaintiff argues, in essence, that Sverdrup was wrong. Plaintiff submitted with its second motion an affidavit from C. Terry Pfoutz, who was employed by SHPO for 14 years and states that he is a "historic preservation specialist." Affidavit of C. Terry Pfoutz ¶¶ 3,6. Mr. Pfoutz opines that the 1996, 1999 and 2003 studies "erroneously concluded that [major rehabilitation] work would cause the loss of historic integrity of the bridge." Id. ¶ 19. He asserts that the reports lack support for their conclusions and, further, that their a conclusion disagrees with a finding by SHPO in 1990 that a major rehabilitation project detailed in a 1988 report[6] would not affect the bridge's eligibility for inclusion in the National Register. *See* Exhibit (unmarked) (Document No. 97 on electronic docket).

To the extent that Mr. Pfoutz opines that Sverdrup erred in its conclusion that major rehabilitation would impair the historical integrity of the bridge, the Court notes that "[a] party may not undermine an agency decision even with an affidavit of unquestioned integrity from an expert expressing disagreement with the views of other qualified experts relied on by the agency, and a court may not weigh the contrary views of such experts to assess which may be more persuasive." *Buckingham Tp. v. Wykle*, 157 F. Supp. 2d 457, 467 (E.D. Pa. 2001) (citing *Marsh*

---

Preservation Act and does not necessarily lead to the conclusion that "historical integrity," as that term is used in Section 4(f), will be impacted, and Plaintiff points out that no express reference to "historical integrity" is made in the SHPO document. However, even if the Court does not consider SHPO's 1991 finding, it still finds ample support in the consultant's reports that specifically refer to "historical integrity."

[6]There apparently had been some confusion in Plaintiff's earlier motion as to what documents had been reviewed by SHPO in this regard.   In its motion papers, Plaintiffs referred to these documents as a 1991 feasability study and engineering report. *See*, *e.g.*, Memorandum of Law in Support of Plaintiff's Second Motion at 12.  In actuality, the documents were two Sverdrup reports from 1988 which have since been obtained by the parties and filed as part of the record.

*v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)). Additionally, to the extent there may be differing views in the record, the Supreme Court has noted that "[w]hen specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a [reviewing] court might find contrary views more persuasive." *Marsh*, 490 U.S. at 378. The Court, therefore, finds that not established their likelihood of success on this first issue.

The second issue raised by Plaintiff is that involving Parcel 122. Plaintiff claims that this parcel should have been addressed in an appropriate Section 4(f) analysis and it was not. This issue apparently came to light subsequent to Plaintiff's first motion for an injunction when questions were raised as to the validity of a 2007 transfer[7] of the parcel from the Borough of Highlands to the State of New Jersey. Plaintiff notes, however, that these 4(f) issues are implicated only if the municipality was the entity with jurisdiction over the parcel rather than the State. Significantly, as the Court noted in its earlier decision, the State Defendants provided evidence that, in fact, this was a state-owned parcel pursuant to a deed from 1962. State Defendant's Exhibit (Second Motion) 2 at ¶ 3; see also Exhibit (Second Motion) 1.

Additionally, Plaintiff has conceded that the alleged historic dock on the property has been demolished and there has been "an entire take and use of [Parcel] 122, already, for the construction of the bridge." Memorandum of Law in Support of Plaintiff's Second Motion at 6. *See also* p. 9 ("There has been an entire take and use of [Parcel] 122."). As such, Plaintiff's claims with respect to Parcel 122 may be moot. *County of Morris v. Nationalist Movement*, 273 F.3d 527 (3d Cir. 2001) (a case is moot if "developments occur during the course of adjudication

---

[7]A challenge to the transfer has been brought in state court

that . . . prevent a court from being able to grant the requested relief."). However, even if there were some relief that the Court could provide with respect to Parcel 122, it appears it would be in the nature of remediation. Plaintiff has not shown that the injunction it presently seeks -- namely, halting demolition of the existing bridge -- would further such relief. Because the dock has already been destroyed and the disputed parcel has already been subject to an "entire take," an injunction halting the ongoing demolition of the existing bridge would appear to do nothing to facilitate any potential remedy with regard to Parcel 122.

For the reasons above, the Court finds Plaintiff has not establish the first element of the Rule 62(c) analysis.

## Irreparable Harm

The State Defendants concede and the Court found in its earlier decision that destruction of the existing bridge constitutes irreparable harm. The Court finds that Plaintiff has established this second element of the Rule 62(c) analysis.

## Injury to Other Parties/Public Interest

Being that state and federal government agencies are the defendants in this case, and this case concerns construction affecting a portion of a major transportation route (and, indeed, the coastal evacuation route) in Monmouth County, it is apparent that the third element of the analysis -- "whether issuance of the stay will substantially injure the other parties interested in the proceeding" -- and the fourth element -- "where the public interest lies" -- effectively merge. As discussed in more detail in the Court's earlier Opinions, these last two element weigh in favor of denying Plaintiff's request for an injunction. Succinctly stated, "[a]n injunction halting, even temporarily, a project to replace a 75-year old bridge at the end of its service life, that is in a state

of disrepair and which continues to deteriorate, and that is a key link in a major coastal evacuation route, presents serious public safety concerns." May 30[th] Opinion at 14. Nevertheless, Plaintiff argues that the bridge is not an immediate public safety hazard and asserts that the bridge being in a state of disrepair "is the fault of NJDOT, which neglected it for many years." Memorandum of Law in Support of Plaintiff's Motion for Stay at 10.  However, the Court has previously detailed the specific public safety concerns with respect to the existing bridge, *see* February 20[th] Opinion at 17-18.   Additionally, the Court does not see how the apportionment of "fault" for the condition of the Route 36 Bridge lessens the importance of public interest in ensuring that the bridge remains a safe, reliable and functioning part of the area's infrastructure.

## III.  Conclusion

For the reasons expressed above, Plaintiffs' motion for an injunction pending appeal is denied.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: July 15, 2008

12